## In re IOWA EGG CO. et al.
### Bankr. No. 1–19.

United States District Court
S. D. Iowa, C. D.
March 20, 1951.

Wendell Gibson of Gibson, Stewart & Garrett, Des Moines, Iowa, for reclamation petitioners, Lambert J. Greteman, d/b/a Greteman Produce and Lauridsen Creamery.

John H. Neiman of Neiman & Neiman, Des Moines, Iowa, for reclamation petitioners, Frigid Food Products, Inc., Swift & Co., Armour & Co.

N. L. Friedman, of Des Moines, Iowa, for trustee.

RILEY, District Judge.

This matter is before the court on petitions for review of decisions by Henry A. Bundschu, Referee in Bankruptcy, in respect of five reclamation petitions filed by Armour & Company, Swift & Company,

Frigid Food Products, Inc., Lambert J. Greteman, d/b/a Greteman Produce Company, and Lauridsen Creamery, seeking to reclaim from the Trustee herein certain described property or the proceeds of its sale.

The property consisted of cases of shell eggs, cases of frozen eggs and empty cases, delivered by petitioners to the bankrupt from November 18 to 25, 1949, both inclusive.

The bankrupt made a voluntary assignment for the benefit of creditors pursuant to Chapter 681, Code of Iowa 1946, I.C.A. filed on Nov. 28, 1949, at 3:35 P. M. An involuntary petition in bankruptcy was filed in this court on Dec. 29, 1949. An adjudication of bankruptcy was entered on Feb. 4, 1950, and on Feb. 17, 1950, Elmer W. Scott was appointed and qualified as Trustee.

The reclamation petitions were filed in the order and for the property as follows:

| | | |
|---|---|---|
| 3-1-50 | Frigid Food Products, Inc. | |
| | 120—30 lb. cans of whole eggs | $1206.00 |
| 3-14-50 | Armour & Co. | |
| | 78 cases of eggs sold Nov. 25, 1949 | 851.25 |
| 3-27-50 | Swift & Co. | |
| | 27 cases of eggs sold Nov. 22, 1949 | 299.70 |
| | 21 " " " " " " | 233.10 |
| | 19 " " " " " " " | 208.05 |
| 4-25-50 | Lauridsen Creamery— | |
| | 250 cases ungraded Nov. 23, 1949 | 2962.50 |
| | 250 " " " " " | 2962.50 |
| | 250 empty cases " " " | 62.50 |
| | 249 ungraded " 25, " | 2950.65 |
| 4-25-50 | Greteman Produce Co.— | |
| | 126 cases ungraded Nov. 18, 1949 | 1398.60 |
| | 49 " A large eggs Nov. 18, 1949 | 764.40 |
| | 120 " A " " " 22 " | 1872.00 |
| | 60 " ungraded " " " " | 666.00 |

The bankrupt had paid for the property claimed by issuing checks of even date with the sales, all of which went unpaid because of insufficient funds. The trustee found that all checks were issued with knowledge that they would not be paid when presented in the ordinary course of business and that the transactions were fraudulent. This finding has support in the evidence and is approved.

None of the petitioners served notice of rescission or took any other action to rescind the several transactions as permitted by Chapter 554 and Section 554.62, Code of Iowa, 1946, I.C.A. It is their theory that the fraudulent conduct made the bankrupt a trustee ex maleficio, holding their property in trust and thus entitling them on demand to its return or to the proceeds of its sale. No such demand was made of the bankrupt.

They attempt to trace it by identifying it as part of the whole coming into the hands of the assignee. Since no money or bank account came into the assignee's hands, they must look only to the property he received.

This they seek to do by showing that the inventory filed by the assignee in the State court discloses that there passed to him "1070 cases of shell eggs, approximately 220 cans frozen eggs and egg cases, cans, fixtures, supplies and equipment, $2000.00."

All of this and other property was sold by the assignee and after payment of labor claims, taxes, fees, costs and other items, with the approval of the State court, there was paid and delivered to the trustee the amount of $4,650.72.

From the whole record the Referee concluded that when the bankrupt bought the eggs and property in question the title passed and the relation was that of debtor and creditor. He found that—

"Petitioners have established that they were the innocent victims of a fraudulent scheme" but that

"They must go further and identify their eggs or the proceeds of them in the hands of the Trustee in Bankruptcy."

In his order denying reclamation he finds that they have "not sustained the burden of proof requisite for maintaining the reclamation petition" and their claims are general creditor's claims.

A reading of the entire record and consideration of the comprehensive briefs submitted by counsel compels us to sustain the findings and conclusions and order of the Referee denying the right of reclamation.

Counsel in both oral and written argument assume that having shown their eggs and cases were delivered to the bankrupt, through the fraudulent scheme recognized by the Referee, and having shown that so many eggs and cases were delivered to the assignee, ipso facto they have a pro tanto interest in the mass or in the proceeds of its sale. This overlooks the burden that the petitioners carry of tracing their prop-

erty into the mass that came to the assignee.

■ They argue—"When the constructive trust was created in favor of the petitioners by the bankrupt obtaining their property by fraud, it is presumed that he would retain that property and that any subsequent sales by him would have been of his own property and not that of his cestui, and even if he sold the property of his cestui and subsequently purchased similar property it would be presumed that he purchased it for the benefit of his cestuis."

The rule is sound but the evidence offered by petitioners discloses that the property which the bankrupt bought and sold during those last weeks of operation was acquired by the same fraudulent method and that there was no other property of "his own" to commingle.

■ The first checks to any of these petitioners were issued Nov. 18, 1949, to Greteman Produce Co. for $1398.60 and $764.40. The assignment was made Nov. 28, 1949. There was a bank overdraft on Nov. 25, 1949. Between Nov. 18 and 25, 1949, the bankrupt made bank deposits of $35,230.11. The Referee found that—"the aggregate total of unpaid outstanding checks on Nov. 26, 1949, when the bankrupt ceased business, amounted to $51,003.-50," ranging from $5.00 to $3025. In the absence of other proof showing any other activity of the bankrupt than handling eggs, it must be inferred that the above bank deposits were proceeds of the sale of eggs and the checks were for the purchase of eggs. At the prices indicated in the reclamation petitions, this could account for the purchase of several thousand cases of eggs or cans of eggs or of empty cases.

It is not shown whether the 1070 cases received by the assignee were "Dirts", "Chex", "Dirties," "A large" or "ungraded." The record discloses a range from $15.60 per case for "A large" eggs down to $11.10 per case for "Chex" and "Dirties." The several petitions claim eggs sold under the various classifications or grades. There is no proof as to the volume or kind of eggs received and sold during the eight days covered when the bankrupt issued checks for more than $86,000, presumably for the purchase of eggs. We accept the determination of the Referee that they have failed to carry their burden of identifying their property, either as that in the hands of the trustee or of the same kind, type or grade. His considerations find support in National City Bank of New York v. Hotchkiss, 231 U.S. 50, 34 S.Ct. 20, 58 L.Ed. 115, and In Re Horigan Supply Co., 8 Cir., 2 F.2d 791.

Similarly we accept his separate findings as to Frigid Foods Inc., wherein he says: "The evidence does not show that said eggs or the proceeds thereof, were turned over to the assignee for the benefit of creditors or to the Trustee in Bankruptcy herein. Frigid Foods Products, Inc. has failed to sustain its burden or produce such proof and it is therefore not entitled to have its Reclamation Petition sustained, in accordance with the authorities fully set forth in the Court's previous findings and conclusions on reclamation petitions filed herein on Dec. 2, 1950."

The property went into the hands of the bankrupt with petitioners consent. When the fraud was discovered there was no rescission attempted before the assignee sold the property in December. Whether rescission, according to the Iowa statute, is a prerequisite to the present claim, we do not determine. We do hold that despite the wrongful taking and probable mingling at some earlier time the property has not been sufficiently identified to appropriate the entire assets in the hands of this trustee for distribution among these petitioners.

The question certified by the Referee—"Can (petitioner) reclaim property from this estate or the equivalent thereof when it cannot specifically point out its property?" should be answered in the negative and the order denying the several reclamation petitions approved. The Clerk will enter the following order:

In the above entitled bankruptcy action there came on for hearing before the court at Des Moines, Iowa, petitions by claimants to review the order of Hon. Henry A. Bundschu, Referee in Bankruptcy (assigned) entered herein on Dec. 22, 1950, and Jan. 5, 1951, and the court being ad-

vised and having filed its memorandum opinion herein;

It is Ordered that the ruling and order of said Referee entered herein on the 22nd day of December, 1950, and Jan. 5, 1951, denying the reclamation petitions of Armour & Co., Swift & Co., Frigid Food Products, Inc., Lambert J. Greteman, d/b/a Greteman Produce Co., and Lauridsen Creamery, be and they are hereby severally confirmed and approved.

Petitioners except.