In re The **CHARTER COMPANY,**
et al., Debtors.

**EIGHTY–EIGHT OIL
COMPANY, Plaintiff,**

v.

**CHARTER CRUDE OIL
COMPANY, Defendant.**

Bankruptcy Nos. 84–289–BK–J–GP to
84–332–BK–J–GP.
Adv. No. 84–226.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Oct. 15, 1985.

Robert J. Reid, Casper, Wyo., for plaintiff.

Lester M. Kirshenbaum, New York City, James H. Post, Karen S. Jennemann, Jacksonville, Fla., for defendant.

MEMORANDUM OPINION

GEORGE L. PROCTOR, Bankruptcy Judge.

This adversary proceeding was commenced by Eighty-Eight Oil (Eighty-Eight) to recover possession of 3,986.6 barrels of crude oil pursuant to a reclamation demand or alternatively to be granted a priority under 11 U.S.C. § 546(c)(2)(A) in the amount of $111,624.80. A trial was held on August 9, 1985, and the parties have sub-

mitted post-trial briefs. The Court's factual findings are derived from a joint stipulation of fact entered into by the parties as well as from evidence adduced at trial.

Charter Crude Oil Company (CCOC) and Eighty-Eight entered into an agreement on September 7, 1983, with amendments thereto dated January 6, January 16, and February 22, 1984, which allowed CCOC to purchase West Texas Sour crude oil from Eighty-Eight on credit terms. Between the 11th and 17th of April, 1984, Eighty-Eight delivered 3,986.25 barrels of crude oil from their leases in Hockley and Cochran counties, Texas, directly into trucks operated by CCOC. These trucks transported 3,421.86 barrels of the crude oil to CCOC's Dawson storage tank and 546.39 barrels of the crude oil to CCOC's Sundown storage tank. The storage tanks are directly connected to the Texas-New Mexico Pipe Line. Automated pumps which operate twenty-four hours a day pumped all of the subject crude oil into the Pipeline by April 18, 1984.

It is customary for over 200,000 barrels of crude oil of like kind and grade to be pumped into the Pipeline every day by over 80 shippers. More than one million barrels of crude oil are housed in the Pipeline facility at one time. The Pipeline maintains a physical inventory which schedules each shipper's current level of crude oil in the Pipeline facility. Each shipper maintains its own operational inventory.

On April 20, 1984, Eighty-Eight sent a notice of reclamation to CCOC. It is undisputed that this demand notice was timely. As of the day of demand, the evidence clearly shows that the subject crude oil was physically located in either the storage tanks or the Pipeline but had been commingled with other crude oil of like kind and grade. Eighty-Eight knew that the crude oil would be commingled with other similar crude oil as this was the customary practice in the oil industry.

Charter Company and various of its subsidiaries including CCOC filed for protection under Chapter 11 of the Bankruptcy Code on April 16, 1984. To the extent that state law governs, Wyoming and Texas law is applicable.

Section 546 of the Bankruptcy Code and § 2–702 of the Uniform Commercial Code defines the rights of reclaiming creditors. Title 11 U.S.C. § 546 conditions the right to reclamation upon two findings: (1) that the debtor was insolvent, and (2) that a written demand for reclamation was made within ten days after the debtor took receipt of the subject goods. Implicit within § 546 is the additional requirement that the goods be identifiable and in the possession of the debtor on the day of demand. *See In re Landy Beef Co., Inc.*, 30 B.R. 19 (Bkrtcy, D.Mass.1983); *In re Flagstaff Foodservice Corp.*, 14 B.R. 462, 32 U.C.C.Rep. 1479 (Bkrtcy, S.D.N.Y.1981). Section 2–702(b) of the Uniform Commercial Code as adopted in Wyoming and Texas parallels the requirements of § 546 of the Bankruptcy Code except that under UCC § 2–702(b) demand can be either oral or written. W.S. 34–21–281; Texas Uniform Commercial Code § 2.702(b).

By agreement of the parties, the issue of the alleged insolvency of CCOC is reserved for separate trial. The sole issue before the Court at this time is whether Eighty-Eight's demand of reclamation was made while the subject crude oil was identifiable and in the possession of CCOC.

█ Since the "goods" involved in this proceeding are fungible, the Court must first address whether fungible goods can be reclaimed under 11 U.S.C. § 546 and UCC § 2–702. Although both 11 U.S.C. § 546 and UCC § 2–702 concern "goods" neither section defines the meaning or the scope of the word. Only in the Uniform Commercial Code is the word "goods" defined; therefore, both 11 U.S.C. § 546 and UCC § 2–702 will be interpreted in light of this one definition.

"Goods" means "all things which are movable at the time of identification to the contract" and includes "an undivided share in an identifiable bulk of fungible goods." W.S. 34–21–205(a) and (d); Texas Uniform Commercial Code § 2.105(a) and (d). The crude oil involved in the instant proceeding

clearly is an undivided share of an identifiable bulk of fungible goods which were within the control of Eighty-Eight. These barrels of crude oil or "goods" were the object of a contract and were delivered to CCOC in accordance with that contract. As Congress did not limit the definition of "goods" in either 11 U.S.C. § 546 or UCC § 2–702, it is apparent and we hold that fungible crude oil can be the subject of reclamation. *See In re Wathen's Elevator's Inc.*, 32 B.R. 912 (Bkrtcy, W.D.Ky. 1983); *In re Western Farmers Ass'n*, 6 B.R. 432 (Bkrtcy, W.D.Wash.1980).

■ Having determined that fungible goods can be reclaimed, we turn to the issue of the degree of identification required in order for the crude oil to be "identifiable." CCOC asserts that Eighty-Eight must identify where the exact molecules of crude oil it delivered are located in order to have the right to reclaim that oil. This would be literally impossible since the crude oil was commingled with other crude oil of like kind and grade in the storage tanks and in the Pipeline within hours after it came into CCOC's possession. Eighty-Eight counters that all it must show is that the goods exist and that they can be quantified. This Court finds that the identification requirement mandates Eighty-Eight tracing the crude oil from its possession into an identifiable mass and to show that the mass contains only crude oil of like kind and grade. *See In re Iowa Egg Co.*, 96 F.Supp. 390 (S.D.Iowa 1951). If the mass of crude oil is subject to CCOC's control then it is both "identifiable" and "in the possession of the debtor."

Although no right to reclamation was found, the analysis of the court in *In re Landy Beef Co.*, 30 B.R. 19 (Bkrtcy, D.Mass.1983), supports this Court's finding that fungible goods can be reclaimed if they are identifiable and in the debtor's possession on the day of demand. *Landy Beef* involved a debtor who purchased beef from various distributors. The beef was shipped directly from the distributor to Sunrise Meats. Upon arrival at Sunrise Meats, the beef would be commingled with other shipments, boned, packaged, and shipped out to debtor's customers. The entire process from delivery to shipment took three days. Any beef that had not been shipped out would have been processed into beef products. Seller demanded reclamation of its beef from Landy Beef within the ten day notice period provided in 11 U.S.C. § 546 but after the three day processing period. The *Landy Beef* court denied seller's right to reclamation finding that on the day of demand the beef was either no longer identifiable or not within debtor's control.

The facts of *Landy Beef* are clearly distinguishable from the instant proceeding since in this matter on the day of demand the crude oil was traceable, it was within CCOC's control and it was not within the control of an ultimate buyer from CCOC. The crude oil can be precisely traced from the time it entered CCOC's possession until the day of demand. First, the crude oil was deposited in CCOC's trucks. The trucks then delivered the crude oil to the Dawson and Sundown storage tanks. Lastly, the storage tank's automated pumps pumped the crude oil into the Pipeline. On the day of demand, the bulk of the subject crude oil was located in the Pipeline with possible traces of the oil remaining in the storage tanks.

Even though the subject crude oil was commingled in the Pipeline with crude oil belonging to other shippers it did not lose its individual characteristic of belonging to CCOC. CCOC still controlled whether the crude oil remained in the Pipeline or whether it was distributed to an ultimate buyer. This degree of control is sufficient to constitute possession. Accordingly, this Court finds that the subject crude oil can be traced into an identifiable mass that was subject to CCOC's control on the day of demand and that this mass contained only crude oil of like kind and grade. If at the separate trial Eighty-Eight can prove CCOC's insolvency as of the day of demand then it will have clearly established a right to reclaim 3,986.6 barrels of West Texas Sour crude oil or to receive a priority under

11 U.S.C. § 546(c)(2)(A) in the amount of $111,624.80.

Jurisdiction is reserved to enter Final Judgment in accordance with this Opinion after trial of the insolvency issue.