In re **WHEELING–PITTSBURGH STEEL CORPORATION, et al., Debtors.**

**BETHLEHEM STEEL CORPORATION, Plaintiff,**

v.

**WHEELING–PITTSBURGH STEEL CORPORATION, et al., Defendant.**

Bankruptcy No. 85–793.
Adv. No. 85–182.

United States Bankruptcy Court,
W.D. Pennsylvania.

June 16, 1987.

See also, Bkrtcy., 72 B.R. 845.

George L. Cass, Buchanan Ingersoll, P.C., Pittsburgh, Pa., for debtors.

Kevin C. Hansen, Meyer Unkovic & Scott, Pittsburgh, Pa., for Bethlehem Steel Corp.

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

### Case Summary

Pursuant to 11 U.S.C. § 546 and Pennsylvania Uniform Commercial Code ("UCC") § 2702, Bethlehem Steel Corporation ("Bethlehem") asserts a right to reclaim 2,249.83 tons of low volatile coal that it sold on credit and delivered to the debtor prior to the commencement of this chapter 11 case. On April 16, 1985, the date on which Bethlehem made written demand for the coal, and the date on which this bankruptcy case was commenced, 1,963.76 tons of the coal had been manufactured into coke; the

remaining 286.07 tons of coal sat unprocessed in the debtor's inventory atop low volatile coal of like grade supplied by other sellers.

■ For the reasons discussed below,[1] we hold that where a supplier has sold and delivered raw materials on credit to an insolvent buyer, and on the date written demand is made for reclamation the raw materials have been manufactured into a finished product, U.C.C. § 2702 does not grant the supplier the right to reclaim the finished product. Therefore, we will deny Bethlehem's complaint for reclamation as it pertains to the 1,963.76 tons of coal that had been manufactured into coke as of April 16, 1985.

■ We further hold that under U.C.C. § 2702 and 11 U.S.C. § 546, fungible goods may be reclaimed if the seller can trace the goods from its possession into an identifiable mass that contains goods of like kind and grade. Satisfied that Bethlehem has met this test as to the remaining 286.07 tons of coal, we shall grant Bethlehem an administrative claim for the value of that coal, $13,459.59, plus interest at the legal rate from April 16, 1985.

### Jurisdiction

This court has jurisdiction over the parties and subject matter of this action under 28 U.S.C. § 1334 and the General Order of Reference of the United States District Court for the Western District of Pennsylvania dated October 16, 1984, entered pursuant to 28 U.S.C. § 152. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(O).

### Facts

From April 8, 1985 through April 15, 1985, while the debtor was insolvent, Bethlehem sold on credit and delivered to the debtor's Monessen, Pennsylvania facility 2,249.83 tons of low volatile coal (the "April Shipment"). The purchase price of the

April Shipment was $105,854.50, and remains unpaid to date.

In a process known as "coking," the debtor blends low volatile coal with high volatile coal, adjusts the mixture for bulk density and charges the mixture into its coke ovens. There, the mixture undergoes substantial chemical and other changes, producing such by-products as tar, ammonium sulfate, light oil and the main product, coke. The coke is then used as industrial fuel.

The debtor filed a petition for relief under chapter 11 of the Bankruptcy Code on April 16, 1985. On that date, Bethlehem made a timely written demand under U.C.C. § 2702 and 11 U.S.C. § 546 for the return of the April Shipment. By April 16, 1985, however, 1,963.76 tons of the April Shipment had been manufactured into coke. The remaining 286.07 tons of the April Shipment sat unprocessed in the debtor's inventory atop a pile of low volatile coal of similar quality delivered by other sellers. The debtor refused to comply with Bethlehem's reclamation demand, and subsequently manufactured the remaining 286.07 tons of coal into coke.

On April 18, 1985, Bethlehem filed a Complaint for Reclamation pursuant to 11 U.S.C. § 546 and U.C.C. § 2702. After hearings, the parties submitted a joint stipulation of facts together with their respective affidavits and briefs. The issues are as follows:

1. Where a supplier of raw materials has sold and delivered raw goods on credit to an insolvent buyer, and on the date written demand is made for reclamation the raw goods have been manufactured into a finished product, does UCC § 2702 grant the supplier the right to reclaim the finished product?

2. Where a supplier of raw materials has sold and delivered raw goods on credit to an insolvent buyer, and as of the date written demand is made for reclamation the goods have been commingled with an identifiable mass of goods of like kind and

---

1. This opinion constitutes the court's findings of fact and conclusions of law as required by Bankruptcy Rule 7052. The court's factual findings are derived from a joint stipulation of facts submitted by the parties.

grade, may the seller reclaim the goods he sold if he can trace those goods from his possession into the identifiable mass of goods in the debtor's possession?

Section 546 of the Bankruptcy Code preserves the statutory or common law right of a seller of goods to reclaim goods sold to the debtor if the debtor has received such goods while insolvent. The right is subject, however, to the power of the court to deny reclamation and protect the seller by granting him an administrative claim for the purchase price of the goods. *See* § 546(c)(2).

In Pennsylvania, the relevant statutory right of reclamation is found in U.C.C. § 2702. Section 2702 provides that:

Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand within ten days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three months before delivery the ten-day limitation does not apply.

13 Pa.C.S.A. § 2702(b) Purdon (1984).

Bankruptcy Code § 546(c)(1) adds the additional requirement that the notice of demand be in writing.

From the length of the parties' briefs, one might conclude that the issues presented are complex and difficult. However, resolution of the instant dispute is achieved by applying the unambiguous language of § 2702.

The opening sentence of § 2702 states that "Where the seller discovers that the buyer has received *goods* on credit while insolvent he may reclaim *the goods* upon demand made within ten days after receipt, ..." (emphasis added). The first reference to "goods" obviously refers to the merchandise that the buyer purchased and received on credit while insolvent. Thus, the first question under § 2702 is what goods did the buyer receive on credit while insolvent? In the instant case, the debtor received 2,249.93 tons of low volatile coal worth $105,854.50.

The second reference to goods in § 2702 is the language *"the* goods" (emphasis add-

ed). The phrase in which that language appears states that "[the seller] may reclaim the goods upon demand made within ten days after receipt." The phrase "the goods" obviously refers to the "goods" first mentioned in the opening language of § 2702 (i.e., the merchandise purchased and received by the buyer while insolvent). Therefore, of the "goods" that the buyer received on credit while insolvent, the seller may only reclaim "the goods" in the buyer's possession on the date the written demand for reclamation is made.

The UCC definition of "goods" does not expressly include products that have been manufactured from goods. *See* U.C.C. § 2105. And nothing in § 2702(b) expressly extends the right of reclamation to include products of goods. Had the drafters of the UCC intended to extend the right of reclamation to products, the language for doing so was readily available and was in fact used in other sections of the UCC. *See* § 9315 ("If a security interest in goods was perfected and subsequently the goods or a part thereof have become part of a product or mass, the security interest continues in the product or mass ..."). In the absence of language expressly granting a right of reclamation as to products of goods, it must be concluded that no such right exists. *Cf. In re Coast Trading Co., Inc.,* 744 F.2d 686 (9th Cir.1984) ("Section 2–702 speaks only of reclaiming *goods* not of reclaiming proceeds. Section 2–702 therefore does not in and of itself create a right to reclaim the proceeds of the resale of the goods.") (emphasis in original; citations omitted).

Of the 2,249.93 tons of low volatile coal that the debtor purchased and received from Bethlehem while insolvent, 1,963.76 tons had been manufactured into product (coke) as of the date Bethlehem made written demand for the April Shipment. Accordingly, Bethlehem does not have a right of reclamation as to the coke. Neither is Bethlehem entitled to an administrative claim for the value of the 1,963.76 tons of coal since there first must be a valid reclamation right under state law, denied here by the bankruptcy court, before adminis-

trative expense priority may be granted. *Flagstaff Food Service Corp.*, 14 B.R. 462, 468 (Bankr.S.D.N.Y.1981). *See also In re Mesa Refining, Inc.*, 66 B.R. 36 (Bankr.D. Colo.1986). Therefore, U.C.C. § 2702 is unavailing to Bethlehem as to the 1,963.76 tons of coal.

■ Apart from the statutory right of reclamation found in UCC § 2702, Bethlehem seeks to reclaim the 1,963.76 tons of coal using the common law of accession. Bethlehem argues that "[i]t is a long established doctrine of the law that if by the skill and labor of one person, materials of that person are combined or united with the materials of another, forming a single, joint product, the owner of the principal materials which go to make up the whole acquires by accession the right of property in the whole." (Bethlehem Memorandum of Law at p. 8, citing 1 Am Jur.2d Accession and Confusion § 2).

The common law of accession does not advance Bethlehem's case since the debtor, not Bethlehem, is the owner of the principal materials that went to make up the whole. The principal materials used to manufacture the product (coke) include the 1,963.76 tons of low volatile coal sold and delivered to the debtor by Bethlehem. Prior to delivery, Bethlehem was the owner of that coal. However, upon delivery of the low volatile coal to the debtor's Monessen facility, title to the coal passed to the debtor. *See* U.C.C. § 2401. Bethelehem would have the power to regain title to the coal if it established a right of reclamation under U.C.C. § 2702. However, we have determined that Bethlehem has no right to reclaim the 1,963.76 tons of coal under § 2702. Therefore, on April 16, 1985, the debtor owned the 1,963.76 tons of coal. Since Bethlehem is not the owner of the principal materials that went into making the coke, the common law of accession does not advance Bethlehem's reclamation action.

As to the remaining 286.07 tons of coal from the April Shipment, on the date Bethlehem made its written demand for reclamation, that coal sat in the debtor's inventory atop a pile of coal of like kind and grade that had been delivered by other sellers. These 286.07 tons were reclaimable by Bethlehem unless the commingling of this coal with coal from other sellers defeats Bethlehem's right of reclamation. The issue is whether U.C.C. § 2702 permits the reclamation of fungible goods, and if so, under what circumstances.

We are unaware of any cases in this circuit that address this question. However, the issue was squarely addressed in *Charter Oil Co.*, 54 B.R. 91 (Bankr.M.D. Fla.1985) (reclamation of crude oil). In *Charter*, the court noted that neither Bankruptcy Code 546 nor U.C.C. 2702 defines the meaning or scope of the word "goods" for purposes of reclamation. *Charter*, 54 B.R. at 92. Therefore, the court relied on the only definition of goods offered in the UCC, that which is found in § 2105.

Section 2105 defines "goods" as "all things ... which are movable at the time of identification to the contract ..." and includes "an undivided share in an identified bulk of fungible goods." *Id.* The court in *Charter* recognized that the definition of "goods" found in U.C.C. § 2105 was neither limited by U.C.C. § 2702 nor made inapplicable or limited by Congress under Bankruptcy Code § 546. Accordingly, the court held that fungible crude oil could be the subject of a reclamation under § 2702.

After determining that fungible goods could be reclaimed under § 2702, the court in *Charter* turned to the issue of the degree of identification required for the crude oil to be "identifiable." *Id.* at 93. The resolution of that issue was necessary due to the implicit requirement in Bankruptcy Code § 546 that the goods "be identifiable and in the possession of the debtor on the date of demand." *id. citing Landy Beef Co., Inc.*, 30 B.R. 19 (Bankr.D.Mass.1983); *In re Flagstaff Foodservice Corp.*, 14 B.R. 462 (Bankr.S.D.N.Y.1981). The court in *Charter* rejected the argument that the identification requirement requires the seller to identify where the exact molecules of crude oil it delivered are located in order to have the right to reclaim that oil. *Charter*, 54 B.R. at 93. Instead, the court held that the identification requirement "mandates

[the seller] tracing the crude oil from its possession into an identifiable mass and to show that the mass contains only crude oil of like kind and grade." *Id.* We find *Charter* persuasive.

■ Here, it is undisputed that on April 16, 1985, the April Shipment was traceable from Bethlehem's possession into an identifiable mass of low volatile coal in the debtor's possession that contained only low volatile coal of the kind and grade delivered by Bethlehem. Actually, the low volatile coal from Bethlehem was "commingled" with coal from other sellers only in the loosest sense of the word since the 286.07 tons of coal from Bethlehem sat on top of the pile. Therefore, the instant facts present a stronger case for reclamation than those in *Charter* wherein crude oil from various suppliers was blended in pipe lines and storage tanks.

■ No evidence was presented regarding the current market price for low volatile coal of the kind and grade at issue here. If the current market price for such coal is significantly higher than it was on the date when Bethlehem was entitled to reclaim the 286.07 tons, Bethlehem could reap an undeserved windfall if it were allowed to reclaim 286.07 tons of coal today from the debtor's inventory. On the other hand, if the price of such coal today were significantly less than it was on the date that Bethlehem could have reclaimed, and we ordered Bethlehem to reclaim in lieu of an administrative claim for a prorated portion of the purchase price, Bethlehem would be prejudiced. Had Bethlehem been able to reclaim the 286.07 tons of coal on April 16, 1987, as was its right, it could have invested the proceeds of sale and received interest. The supply of the 286.07 tons of coal in question is on the same footing as other materials purchased by the debtor postpetition for its operation and payment was due promptly in the ordinary course. Therefore, we shall grant Bethlehem an administrative claim in the amount of $13,459.59, plus interest at the legal rate from April 16, 1985.

*Conclusion*

For the reasons discussed above, we will deny Bethlehem's complaint for reclamation as to 1,963.76 tons of coal from the April Shipment. However, we will grant its complaint as to the 286.07 tons of coal from the April Shipment, which had a prorated purchase price of $13,459.59. Bethlehem shall be granted an administrative claim against the debtor's estate in the amount of $13,459.59, plus interest at the legal rate from April 16, 1985.