**In re COUPON CARRIERS CO., an Illinois partnership, Debtor.**

**COUPON CARRIERS CO., Appellant,**

v.

**J.L. MARSH MANUFACTURING CO., Appellee.**

**No. 87 C 4060.**

United States District Court, N.D. Illinois, E.D.

Aug. 18, 1987.

Ellen Beverly, Arnold S. Graber, Katten, Muchin, Zavis, Pearl, Greenberger & Galler, Chicago, Ill., for Coupon Carriers.

Mitchell E. Jones, Epton, Mullin & Druth, Chicago, Ill., for J.L. Marsh Mfg. Co.

### MEMORANDUM OPINION AND ORDER

WILLIAM T. HART, District Judge.

This case poses the question of whether the value of a reclamation right in goods for purposes of determining an administrative priority claim under Section 546(c) of Title 11 of the United States Code (the "Bankruptcy Code") is the market value of such goods when sold by the debtor with

consent of the seller or the higher cost of such goods as fixed by the sales contract with the debtor.

The dispute arises from an adversary complaint for reclamation filed by J.L. Marsh Manufacturing Co. ("Marsh"). Coupon Carriers Co., the debtor, was in the business of retailing merchandise by means of advertising inserts placed in the billing envelopes of other companies. Coupon Carriers ordered 500 custom-made security lights for inventory from Marsh for the invoiced price of $23,497. The goods were delivered to Coupon Carriers on credit. Within ten days of the delivery of the security lights, Marsh learned that Coupon Carriers was experiencing financial difficulties. Marsh made a timely demand for return of the security lights pursuant to Section 2–702(2) of the Uniform Commercial Code, Ill.Rev.Stat. (1985), ch. 26, § 2–702(2) and Section 546(c) of the Bankruptcy Code.

Coupon Carriers and Marsh negotiated the terms of an agreed order executed by the parties and entered by the Bankruptcy Court which provides that Marsh was granted a lien in and to the security lights pursuant to and in accordance with Section 546(c)(2) of the Bankruptcy Code and authorized Coupon Carriers to sell the security lights in accordance with the Bankruptcy Court's order authorizing debtor to sell its inventory. That order required Coupon Carriers to segregate the proceeds of the sale of the security lights from the proceeds and sales of other inventory, and to file an accounting. The accounting listed the proceeds of sale of the security lights as $3,834.00. The Bankruptcy Court entered an order authorizing Coupon Carriers to compensate Marsh for its claim in the amount of $3,834.00.

Thereafter, Marsh presented an application for an administrative claim for the balance of the invoice price pursuant to the terms of Paragraph 4 of the agreed order. Paragraph 4 states in pertinent part:

In the event that the Accounting indicates that [Marsh's] claim will not be paid in full ..., this Agreed Order shall be without prejudice to the right of [Marsh] to seek an Order from this Court granting [Marsh] a lien upon any property of the Debtor other than the [security lights], and/or granting [Marsh] a priority claim of the kind specified in § 503(b) of the [Bankruptcy] Code, *and this Order shall similarly be without prejudice to the right of Debtor or any other party in interest to contest [Marsh's] right to such relief.* (emphasis added)

Over objection of the debtor the Bankruptcy Court awarded Marsh an administrative claim in the amount of $19,663 which represents the unrecovered balance due for the security lights.

The debtor argues that Marsh agreed to the sale; that there is no contention that the sale was not commercially reasonable; that the reclamation right attached only to the proceeds of the sale which represents the market value of the goods; and that the balance of the unpaid invoice is an unsecured contract claim against the estate which should not be given priority over other claims.

Bankruptcy courts are not usually required to determine the value of reclaimed goods. If a seller takes possession of the goods subject to its demand, neither the court nor any other party requires a calculation of value. If a seller recovers something less than all of the goods delivered, a court may be required to determine the value of the goods.

In *Matter of Flagstaff Foodservice Corp.*, 14 B.R. 462 (Bankr.S.D.N.Y.1981), it was held that a seller of foods was only entitled to an administrative priority claim for goods in the possession of the debtor on the date of the demand for return, and the seller was not entitled to an administrative priority claim for the balance of its invoice for shipment. The court stated:

At first blush, these quoted words [from legislative history] suggest that a seller could be given his priority for the invoiced amount rather than for the value of the goods which he could actually recover. But this reading of these few words would require the court to ignore their context and to put at nought strong

policy considerations which underline bankruptcy principles.

The context of which the above statement is a part recognizes the continuing vitality of U.C.C. Section 2–702 or common law rights given reclaiming sellers. All Section 546(c)(1) does is assess a somewhat different procedural mode by requiring a written demand for reclamation within 10 days of the receipt of the goods by the debtor in a bankruptcy proceeding. There is absolutely nothing to show that Congress meant to expand rights given, absent bankruptcy, by state law or the common law. The plain language of all the legislative comments makes this clear.

All this aside, bankruptcy is governed by its own truths and those truths relevant here also require the court to construe Section 546(c)(2) in favor of the debtor and the overwhelming mass of the debtor's unsecured creditors for whom neither U.C.C. Section 2–702, the common law, nor Section 546(c) works.

First it must be recognized that Congress' scheme of priority creditors, while designed to achieve important policy aims thought relevant, nevertheless distorts one of the dominant schemes of bankruptcy—equality of distribution. *See, inter alia, Nathanson v. N.L.R.B.,* 344 U.S. 25, 29, 73 S.Ct. 80, 83, 97 L.Ed. 23 (1952). It follows, therefore, that if Congress meant to give the 10–day seller so much more than he ever had under non-bankruptcy law to the exclusion and detriment of the 11–day seller, it would have expressed itself far more clearly. Because any system of priorities ultimately attenuates the yield for those for whom Congress was less solicitous, the expressions of those priorities should be strictly read and not expanded unless plainly mandated.

The second truth is that reorganization under Chapter 11 is one of the desired aims of Congress for the financially pressed but honest debtor. The care Congress took in enacting Chapter 11 as "a carefully matured enactment", *Guessefeldt v. McGrath,* 342 U.S. 308, 319, 72 S.Ct. 338, 344, 96 L.Ed. 342 (1952), is reflected in the exhaustive discussions and numerous changes made before enactment of the final version. To achieve reorganization for the benefit of debtors and creditors alike, Congress gave the court the latitude Section 546(c)(2) gives it to ensure that the debtor's continued operation would not be adversely affected by the improvident grant to a seller of the right to retrieve its goods in the debtor's possession.

Section 546(c)(2) must therefore be read as striking a balance so that the debtor has the use of the goods it needs for its ongoing business while the seller has their value. To give the seller more, absent a clear indication that this should be so, cuts against the grain of compelling bankruptcy themes. In short, Congress' coverage of the reclaiming seller is vital to the Chapter 11 mission. *See Powell v. U.S. Cartridge Co.,* 339 U.S. 497, 516, 70 S.Ct. 755, 765, 94 L.Ed. 1017 (1950).

*Id.* 14 B.R. at 467–68. The court concluded that the value of a reclamation claim was not the amount invoiced for goods sold, but rather the value of the goods in the possession of the debtor when the demand was made. The same reasoning is applicable here. *In re Coast Trading Co., Inc.,* 744 F.2d 686, 692 (9th Cir.1984).

Section 502(b) of the Code requires that all disputed claims be valued or established. The agreed order controlling the Coupon Carriers/Marsh transaction determined the reclamation value of the security lights by offering them for public sale. Marsh does not argue that it was forced to abide by a court order granting relief or restrictions it had not sought. Coupon Carriers offered the security lights for sale in a commercially reasonable manner and thereby effected a sale. The propriety of sale has never been disputed. Marsh cannot now demand that the valuation mechanism it accepted be set aside simply because it may have made a bad bargain or because the debtor may have earlier contracted to pay more than the market value of the goods at the time of sale. Risk of such a differential should not be imposed

on the estate. Even a secured creditor has only an unsecured claim for any amount by which the dollar amount of its claim exceeds the value of its collateral. 11 U.S.C. § 506(a). The same rule must apply here.

Marsh is entitled to pursue an unsecured claim for the balance of its claim—that is, the difference between the original sale price of the security lights (as reflected in the Marsh invoices) and the value of its reclamation right (as reflected by the proceeds raised by the sale of the lights). However, Marsh is not entitled to priority status beyond the value of the security lights as established by their sale in accordance with the bankruptcy court's order.

IT IS THEREFORE ORDERED that the judgment of the Bankruptcy Court is reversed. The case is remanded with instructions to limit the reclamation claim of J.L. Marsh Manufacturing Co. to the proceeds of the sale of the security lights sold and allow an unsecured claim in the amount of $19,663.