In re PERFORMANCE PAPERS, INC., Debtor.

PERFORMANCE PAPERS, INC., Plaintiff,

v.

GEORGIA–PACIFIC CORPORATION, Defendant.

PERFORMANCE PAPERS, INC., Plaintiff,

v.

PFIZER, INC., Defendant.

SIMPSON PAPER CO., Plaintiff,

v.

PERFORMANCE PAPERS, INC., Defendant.

A.E. STALEY MANUFACTURING CO., Plaintiff,

v.

PERFORMANCE PAPERS, INC., Defendant.

Bankruptcy No. GK 89–04369.

Adv. Nos. 90–8074, 90–8070, 89–0391 and 90–8054.

United States Bankruptcy Court, W.D. Michigan.

Sept. 26, 1990.

Bruce R. Grubb, Kalamazoo, Mich., for Georgia–Pacific Corp., Pfizer, Inc., and Simpson Paper Co.

Gregory G. St. Arnauld, Kalamazoo, Mich., for A.E. Staley Mfg. Co.

Robert B. Borsos, and Jeffrey S. Rubel, Kalamazoo, Mich., for Performance Papers, Inc.

## OPINION ON JOINT MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT

JAMES D. GREGG, Bankruptcy Judge.

### Issue

The joint motion for summary judgment and/or partial summary judgment in these related adversary proceedings raises the issue of the proper valuation of the replacement liens granted to certain reclamation creditors. While each of the reclamation creditors supplied the Debtor with different raw materials used in the Debtor's business operations, the method of valuation of those goods on hand at the time of a valid reclamation demand involves a common issue of law to be decided by the court. The reclamation creditors assert that the value of the supplied goods on hand at the time of the reclamation demand is to be determined by the invoice price of the goods. The Debtor asserts that the value should be determined by the amount realized by the subsequent resale of those goods.

### Procedural Background

The court has jurisdiction over these adversary proceedings. 28 U.S.C. § 1334. The adversary proceedings are core proceedings and the court has power to enter final judgments. 28 U.S.C. § 157(b)(2)(A), (K) and (O). The opposing parties have agreed that the instant joint motion involves a purely legal determination and there exists no disputed issues of material fact regarding the issue presented. The grant of a summary judgment is therefore appropriate. Bankruptcy Rule 7056; F.R. C.P. 56(c); *FMB–First Michigan Bank v. Van Rhee*, 681 F.Supp. 1264 (W.D.Mich. 1987).

Performance Papers, Inc., "Debtor", filed for relief under chapter 11 of the Bankruptcy Code on November 27, 1989. 11 U.S.C. § 1101 *et seq.* Numerous trade creditors, including Georgia–Pacific Corp., Pfizer, Inc., Simpson Paper Co., and A.E. Staley Manufacturing Co., collectively the "reclamation creditors", had supplied the Debtor with various goods necessary for the Debtor's business operations pursuant to negotiated unsecured credit terms. Subsequent to the chapter 11 filing, the reclamation creditors made demands in writing for the return of goods supplied to the Debtor within the prior ten days, still remaining in the Debtor's possession, in accordance with 11 U.S.C. § 546(c). The Debtor refused to return the goods to the reclamation creditors.

Adversary proceedings were instituted by these reclamation creditors, as well as by other creditors, to compel the Debtor to return the goods subject to the reclamation demands. During the pendency of the adversary proceedings, the Debtor sought authorization from the court to sell inventory, outside the ordinary course of business. Some of the inventory was subject to the reclamation demands; creditors objected to the proposed sales of inventory. Over objections, or after withdrawal of objections, the court authorized the Debtor to sell inventory, upon certain conditions and in the

Debtor's business discretion. The order provided the proceeds from the sales would be held in escrow. Subsequently, after additional notice and hearings, and after further objections were considered, the court entered supplemental orders regarding the Debtor's amended requests to sell remaining inventory pursuant to less restrictive terms and conditions. In no instance did a reclamation creditor agree or consent that the sale of the inventory would establish the value of the reclamation creditor's interest in the inventory.

Subsequently, to resolve certain issues, the Debtor and the reclamation creditors filed a Stipulation Granting Reclamation Creditors a Lien in Assets, Releasing All Escrowed Reclamation Funds and Providing for Debtor–in–Possession Financing.' On May 17, 1990, the court entered its Order Approving Stipulation. That order provided that the proceeds from various sales would be released to prior perfected secured creditors to satisfy their respective secured claims; remaining escrowed funds were released to the Debtor to be utilized for payment of expenses. The reclamation creditors were granted a lien upon all of the Debtor's tangible and intangible personal property to secure repayment of their allowed reclamation claims. Future proceeds from the sales of the Debtor's assets would be utilized to pay the reclamation creditors in accordance with determinations to be made by the court in the reclamation adversary proceedings. The court finds that the stipulated order does not explicitly state, or otherwise contemplate, that the reclamation creditors' claims would be limited to the amount the Debtor received from the resale of those goods which were subject to the reclamation demands.

During the chapter 11 case, the Debtor has sold most of the goods received by it that were subject to the reclamation creditors' demands. It appears that in one instance the Debtor may have realized an amount through resale greater than the invoice price; however, in other instances, the Debtor received less than the invoice prices when the goods were resold.

*Discussion*

It is settled case law that any valid reclamation right pursuant to § 2–702 of the Uniform Commercial Code and § 546(c) of the Bankruptcy Code only covers those goods supplied within the ten days prior to the written demand that still remain in the Debtor's possession at the time of the demand. 11 U.S.C. § 546(c); Mich.Comp. Laws Ann. § 440.2702; *In re Rawson Food Service, Inc. (Flav–O–Rich, Inc. v. Rawson Food Service, Inc.)*, 846 F.2d 1343, 1347 (11th Cir.1988); *In the Matter of Bosler Supply Group (American Saw & Mfg. Co. v. Bosler Supply Group)*, 74 B.R. 250, 252 (N.D.Ill.1987). All parties to these adversary proceedings are in agreement that any reclamation rights would only apply to those goods still on hand at the time of the written reclamation demand that were received within the ten days prior to the demand.

The narrower issue to be addressed by the court is how to value those goods remaining in the Debtor's possession at the time of the demands. It is the reclamation creditors' position that the value of the goods on hand is determinable by the original invoice price for the goods received by the Debtor. The Debtor maintains that the value should be determined by the price that was realized by the subsequent resale of the goods.

The weight of case law supports the proposition that the value of the goods remaining on hand equals the purchase (invoice) price of the goods. *In re Coast Trading Co., Inc. (Collingwood Grain, Inc. v. Coast Trading Co., Inc.)*, 744 F.2d 686, 692–693 (9th Cir.1984) (absence evidence to the contrary, grain sale contract price establishes reasonable value of remaining goods); *Bosler*, 74 B.R. 250, 255 (value of administrative claim for goods remaining on hand determined by invoice amount); *In re Braniff, Inc. (Conoco, Inc. v. Braniff, Inc.)*, 113 B.R. 745, 757 (Bankr. M.D.Fla.1990) (value of administrative claim for remaining aviation fuel determined on basis of invoice price); *In re Wheeling–Pittsburgh Steel Corp. (Bethlehem Steel Corp. v. Wheeling–Pittsburgh*

*Steel Corp.)*, 74 B.R. 656, 659–661 (Bankr. W.D.Pa.1987) (value of administrative claim for remaining coal on hand determined by purchase price).

One case which appears to hold to the contrary is *In re Coupon Carriers Co. (Coupon Carriers Co. v. J.L. Marsh Mfg. Co.)*, 77 B.R. 650 (N.D.Ill.1987), decided by the same court that had decided *Bosler* only months before. *Coupon Carriers* held that, after the reclamation creditor had consented to resale of those goods subject to its reclamation demand, the creditor was not entitled to an administrative priority claim for the difference between the original invoice price and the lower amount later realized from the resale of the goods by the debtor. *Coupon Carriers*, 77 B.R. at 653.

The Debtor asserts that *Coupon Carriers* limits a reclamation creditor to the lower amount realized from a later resale of those goods subject to the reclamation demand. The court rejects this assertion. *Coupon Carriers* is distinguishable because the reclamation creditors in this case have *not consented* to having the value of their reclamation claims determined by a later resale of the goods.

A careful reading of *Coupon Carriers* also reveals yet another distinction. *Coupon Carriers* did not limit the creditor's total claim to the resale amount, it only limited the value of the creditor's administrative priority reclamation claim to the resale amount. The court's precise holding was that it would allow an unsecured claim for the difference between the invoice amount and the resale price, but it would not allow an administrative *priority* status for that difference. The court placed this limit on the creditor because the creditor had earlier consented by an agreed-upon order to have its reclamation claim value determined by the proceeds from the resale of the goods. *Coupon Carriers* recognizes that, by the reclamation creditor consenting to a commercially-reasonable sale as a valuation mechanism, the risk of obtaining less than the original contract price falls upon the reclamation creditor and not the bankruptcy estate. *Coupon Carriers*, 77 B.R. at 652–653.

This court is also cognizant of the economic ramifications of utilizing the resale value to determine reclamation claims for goods that are subsequently liquidated by a debtor rather than reclaimed by the creditor. *Wheeling–Pittsburgh Steel*, 74 B.R. at 661. It is this court's opinion that, as of the date of any valid written reclamation demand, a debtor has two choices. The first option is to return those goods still in its possession for full invoice credit thus returning the debtor and the reclaiming creditor to the status quo; no one is unduly enriched or gains a windfall and no one suffers a detriment. The second option is to retain the goods and attempt to resell the goods for an amount greater than the invoice price. The reclamation creditor, who presumably could have resold the goods to another buyer for the invoice price after reclamation, should not bear the risk of loss if the debtor is unable to resell the goods for an amount equal to or greater than the invoice price. On the other hand, if the debtor is able to resell the goods for an amount greater than the invoice price, any gain inures to the benefit of the estate.

### Conclusion

The court therefore holds, absent evidence to the contrary, the value of each respective reclamation creditor's lien is presumed to be equal to the invoice price for those goods received in the previous ten days and still in the debtor's possession at the time of the written reclamation demand.[1] The reclamation creditors' Joint Motion for Summary Judgment and/or Partial Summary Judgment is granted. The court makes no determination at this time as to the specific amounts of each

---

1. In these adversary proceedings there is no allegation that the original contractual relationships between the Debtor and the reclamation creditors were other than arms-length transactions. No assertions have been made of fraud, collusion, insider-dealing, or other factors that might mandate further inquiry whether the invoice price is artificially inflated and therefore not the correct value of the goods subject of the reclamation demands.

reclamation creditor's claim and leaves the parties to their respective proofs regarding those issues. An order shall be entered accordingly.